**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**STATESVILLE DIVISION**
**CASE NO. 5:23-CV-043-KDB-DCK**

| | | |
|---|---|---|
| KELLY ANN REYNERSON, | ) | |
| | ) | |
| Plaintiff, | ) | **MEMORANDUM AND** |
| | ) | **RECOMMENDATION** |
| v. | ) | |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Brief" (Document No. 10) and "Defendant's Brief" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b). After careful consideration of the written arguments, the administrative record, and applicable authority, the undersigned will respectfully recommend that the Commissioner's decision be <u>affirmed</u>.

## BACKGROUND

Plaintiff Kelly A. Reynerson ("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on an application for disability benefits. (Document No. 1). Plaintiff initially filed an application for a period of disability and disability insurance benefits ("DIB") on or about March 12, 2019, under Title II of the Social Security Act, 42 U.S.C. § 405, alleging an inability to work due to a disabling condition beginning on or about February 6, 2019. (Transcript of the Record of Proceedings ("Tr.") 15, 46). Plaintiff later amended her claim, alleging an inability to work due to a disabling condition beginning on or about October 15, 2019. <u>Id.</u> The Commissioner of Social Security (the "Commissioner" or "Defendant") denied Plaintiff's application initially on or about January 23, 2020, and again after reconsideration on or about April

29, 2020. (Tr. 15, 127, 137, 142). In its "Notice of Reconsideration," the Social Security Administration ("SSA") included the following explanation of its decision:

> The medical evidence shows that your condition is not severe enough to be considered disabling. We do not have sufficient vocational information to determine whether you can perform any of your past relevant work. However, based on evidence in file, we have determined that you can adjust to other work. It has been decided, therefore, that you are not disabled according to the Social Security Act.

(Tr. 142).

Plaintiff filed a timely written request for a hearing on May 11, 2021. (Tr. 150-51). On April 6, 2022, Plaintiff appeared and testified at a hearing before Administrative Law Judge Michelle D. Cavadi (the "ALJ"). (Tr. 44-95). In addition, Kenneth Bennett, a vocational expert ("VE"), and Samuel Furgiuele, Plaintiff's attorney, appeared at the hearing. (Tr. 15, 42).

The ALJ issued an unfavorable decision on September 12, 2022, denying Plaintiff's claim. (Tr. 15-35). On November 7, 2022, Plaintiff filed a request for review of the ALJ's decision, which was denied by the Appeals Council on January 27, 2023. (Tr. 1-3, 249). The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1-3).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on March 27, 2023. (Document No. 1). On April 11, 2023, the undersigned was assigned to this case as the referral Magistrate Judge.

"Plaintiff's Brief" (Document No. 10) was filed August 20, 2023; and the "Defendant's Brief" (Document No. 12) was filed September 13, 2023. "Plaintiff's Reply Brief" (Document No. 13) was filed September 27, 2023.

This case is now ripe for disposition, and therefore, a memorandum and recommendation to the Honorable District Judge Kenneth D. Bell is now appropriate.

## STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards. Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case de novo when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). "[A] reviewing court must uphold the determination when an ALJ has applied correct legal standards

and the ALJ's factual findings are supported by substantial evidence." Peace v. Berryhill, 2019 WL 2406626, at *1 (4th Cir. June 7, 2019) (quoting Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 267 (4th Cir. 2017)). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, between October 15, 2019, and the date of the decision, September 12, 2022.[1] (Tr. 16). To establish entitlement to benefits, Plaintiff has the burden of proving disability within the meaning of the Social Security Act. Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

The Social Security Administration has established a five-step sequential evaluation process for determining if a person is disabled. 20 C.F.R. § 404.1520(a). The five steps are:

> (1)     whether claimant is engaged in substantial gainful activity - if yes, not disabled;
>
> (2)     whether claimant has a severe medically determinable physical or mental impairment, or combination of impairments that meet the duration requirement in § 404.1509 - if no, not disabled;
>
> (3)     whether claimant has an impairment or combination of impairments that meets or medically equals one of the listings in appendix 1, and meets the duration requirement - if yes, disabled;

_____

[1] Under the Social Security Act, 42 U.S.C. § 301, the term "disability" is defined as an: inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (quoting 42 U.S.C. § 423(d)(1)(A)).

4

(4)     whether claimant has the residual functional capacity ("RFC") to perform her/his past relevant work - if yes, not disabled;  and

(5)     whether considering claimant's RFC, age, education, and work experience he/she can make an adjustment to other work - if yes, not disabled.

20 C.F.R. § 404.1520(a)(4)(i-v).

The burden of production and proof rests with the claimant during the first four steps;  if claimant is able to carry this burden, then the burden shifts to the Commissioner at the fifth step to show that work the claimant could perform is available in the national economy.  Pass, 65 F.3d at 1203.  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 34).

First, the ALJ determined that Plaintiff had not engaged in any substantial gainful activity since October 15, 2019, the alleged disability onset date.  (Tr. 18).  At the second step, the ALJ found that "obesity; diabetes mellitus; cervical spondylosis and degenerative disc disease; lumbar and thoracic strain; headaches; asthma allergies; anxiety; depression; and post-traumatic stress disorder (PTSD)" were severe impairments.[2]  (Tr. 18).  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 19-21).

Next, the ALJ assessed Plaintiff's RFC and found that Plaintiff retained the capacity to perform medium work activity, with the following limitations:

> [S]he can frequently climb ramps and stairs;  the claimant can frequently kneel, crawl, crouch and stoop;  she can frequently balance with standing and walking on even terrain;  the claimant can occasionally climb ropes, ladders and scaffolds;  she can frequently reach overhead;  the claimant can be exposed to moderate noise levels . . . the claimant must avoid concentrated exposure to fumes, dusts, gases, areas of poor ventilation, and extremes of heat and

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

5

cold; she can frequently handle and finger; the claimant retains the capacity to do simple, routine, repetitive tasks that can be performed up to 2 hours at a time, and that can be learned by demonstration in 30 days or less; and she can adapt to routine changes.

(Tr. 21-22). In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." (Tr. 22).

At the fourth step, the ALJ held that Plaintiff could not perform past relevant work as a composite position of a school bus driver and cafeteria attendant, a bending machine operator II, a cashier checker, and a construction worker I. (Tr. 33).

At the fifth and final step, the ALJ concluded based on the testimony of the VE and "[c]onsidering the claimant's age, education, work experience, and residual functional capacity" that jobs existed in significant numbers in the national economy that Plaintiff could perform. (Tr. 34). Specifically, the VE testified that according to the factors given by the ALJ, occupations claimant could perform included a hospital cleaner, a food service worker, and an industrial cleaner. (Tr. 34, 83-84). Therefore, the ALJ concluded that Plaintiff was "not under a disability, as defined by the Social Security Act, from February 6, 2019, through the date of this decision," September 12, 2022. (Tr. 35).

On appeal to this Court, Plaintiff alleges the ALJ's decision includes the following errors: (1) The ALJ did not perform a proper "function-by-function" review of Plaintiff's individual capacities in its RFC assessment; and (2) the ALJ decision failed to demonstrate an accurate and logical bridge between the evidence and her conclusions. (Document No. 10, p. 4). The undersigned will discuss each of these contentions in turn.

### A. Function-by-Function Review

In the first assignment of error, Plaintiff argues that the ALJ failed to conduct the correct legal analysis to evaluate her RFC by not conducting a "function-by-function review," and that the ALJ "cherry-picked" evidence to reach her conclusion that Plaintiff retained the RFC to perform medium work. (Document No. 10, p. 4, 6). Plaintiff cites to <u>Mascio v. Colvin</u> to support her argument, contending that, "[t]he failure by an ALJ to conduct a proper 'function-by-function' analysis requires remand." <u>Id.</u> at 5 (citing <u>Mascio v. Colvin</u>, 780 F.3d 632, 635-36 (4th Cir. 2015)).

Plaintiff argues that the ALJ failed to evaluate her capacity for sustained work activity or ability to regularly attend work in her RFC assessment, specifically failing to discuss or consider "how fatigue, . . . severe headaches, or medication would affect her ability to regularly make it through a full day or attend work at acceptable levels." (Document No. 10, p. 5). Specifically, Plaintiff asserts that the ALJ failed to properly consider Plaintiff's testimony that "due to fatigue and pain, she was unable to work every day, . . . could not work a full day, . . . that when she did work, she had to rest the next day to recover, . . . [and] an Epstein-Barr infection periodically flared and incapacitated her with fatigue; severe headaches at times preventing her from working; and medicines for her headaches, cyproheptadine and multiple doses of amitriptyline . . . caused extreme sleepiness and inability to work." <u>Id.</u> at 7 (citing Tr. 50, 63, 65, 67, 71, 74-75). Plaintiff further contends that the ALJ's assessment of her RFC failed to meet the requirements of SSR 96-8p. <u>Id.</u> at 5.

Next, Plaintiff asserts that "[t]he ALJ never separately evaluated sitting, standing, walking, lifting, carrying, pushing, or pulling, as required by SSR 98-6p." (Document No. 10, p. 9). Plaintiff argues that "those that were mentioned, such as sitting, walking, and lifting were done so in passing" and "some inaccurately." <u>Id.</u> at 10. Specifically, Plaintiff asserts the "scattered

7

citations" provided by the ALJ do not explain "[h]ow they support the conclusion that a broad medium residual functional capacity is appropriate." Id. at 10-13 (citing Tr. 22-24, 26-27, 30-33).

In addition to those considerations, Plaintiff contends that the ALJ failed to adequately "explain how she arrived at the capacities" for Plaintiff's non-exertional RFC determinations. (Document No. 10, p. 13). Plaintiff argues that the ALJ "apparently (she did not state this) used [the opinion of reviewing physician, Melvin Clayton, M.D.] as the main basis for the RFC" because the ALJ "incorporated all his opined postural capacities except frequent climbing of ladders/ropes/scaffolds" into the RFC determination. Id. at 14 (citing Tr. 106-7). Plaintiff contends that the ALJ's asserted reliance on Dr. Clayton's opinion was erroneous because "the most recent medical report he cited was from July 22, 2019, . . . months before her claimed onset, and he did not have such things as her December 28, 2021, cervical MRI." Id. (citing Tr. 101-3).

Finally, Plaintiff argues that the ALJ "never evaluated [Plaintiff's] contentions that holding her head in a fixed position looking down or turning her head side to side increased her pain." (Document No. 10, p. 18). Plaintiff asserts that although the ALJ "acknowledged [Plaintiff's cervical spondylosis and degenerative disc disease] as severe . . . [i]t is unclear from her decision what limitations she found it caused." Id. (citing Tr. 18, 21). Additionally, Plaintiff contends that the ALJ failed to properly consider "evidence of record regarding complaints of neck pain." Id. at 19 (citing "complaints of neck pain," Tr. 952, 945, 565, 923, 921, 881, 827, 811, 799, 800, 793, 759, 1012, 1024, 1032, 1033, 1052, 1058, 1059, 1061, 1074, 755, 1107, 1114, 1120, 1131, 1147, 1168, 1173, 1343, 1345, 1365, 1239, 1274, 1260, 1534, 1527, 1573, 1511, 1498, 1490, 1482, 1478, 1566, 1466, 1446, 1245, 1416, 1406, 1402, 1398, 1679, 1541, 1651, 2195, 1602, and "neck stiffness/tightness/tension," Tr. 1019, 1033, 1038, 1042, 1090, 1144, 1478, 1406, 1675, 1810, 1804). Plaintiff argues in addition to "relatively few mentions of neck pain out of the many in the

8

record," the ALJ "never explained how the cervical spine/neck issues actually limited specific functions, in particular her abilities to freely turn her head and maintain a downward gaze." Id. at 20.

Defendant responds that substantial evidence supports the ALJ's decision, the ALJ applied the correct legal standards, and the ALJ properly explained her conclusions. (Document No. 12, p. 4). Defendant further argues that the ALJ performed a proper function-by-function assessment, specifically noting that "the Fourth Circuit has rejected a *per se* rule requiring remand where the ALJ does not perform an explicit function-by-function analysis." Id. at 5 (citing Mascio, 780 F.3d at 636). Regarding Plaintiff's argument that the ALJ failed to evaluate Plaintiff's capacity for sustained work activity and ability to regularly attend work, Defendant responds that, "as stated in 20 C.F.R. § 404.1545, inherent in an ALJ's residual functional capacity finding is that a claimant is able to work 'on a regular and continuing basis.'" Id. at 5.

Regarding Plaintiff's contention that the ALJ failed to meet the requirements of SSR 96-8p by failing to separately evaluate each of Plaintiff's functional limitations, Defendant responds that SSR 96-8p "requires *consideration* of each of these functions separately" but "does not require *articulation* of each individual function." (Document No. 12, p. 6). Defendant further contends that the ALJ provided a "detailed analysis of the evidence and hearing testimony," which provides "ample support for the medium exertion level and functions contained therein." Id. at 7 (citing Tr. 21-33). Defendant also asserts that the ALJ did not "cherry-pic[k] evidence," but rather, "the ALJ balanced acknowledgement of abnormal findings with the many unremarkable findings throughout the record, as well as daily activities and treatment modalities and effectiveness." Id. Specifically, Defendant highlights the ALJ's discussion of "imaging of Plaintiff's cervical spine," "evidence of lumbar and thoracic strain," "examination findings of unremarkable strength, sensation, and

9

reflexes," and "successful response to treatment." Id. at 7 (citing Tr. 1188, 1600-01, 2226, 1189, 1187-88, 1235-36, 1242-43, 2222-23, 2365, 1343-74, 2186-2217, 2476).

Regarding Plaintiff's contention that the ALJ failed to adequately explain how she arrived at Plaintiff's non-exertional capabilities in her RFC determination, Defendant responds that "the detailed decision, read as a whole, provides sufficient analysis of Plaintiff's limitations, and explanations of the ALJ's findings." (Document No. 12, p. 7). Defendant further notes that "the ALJ also found Plaintiff more limited than the state agency medical consultants," including Dr. Clayton. Id. at 8 (citing Tr. 33).

Finally, Defendant argues that "the ALJ assessed Plaintiff's neck complaints and noted her positive response to acupuncture and physical therapy," "acknowledged abnormal findings on imaging of Plaintiff's cervical spine," and "balanced [those abnormal findings] with findings of good cervical range of motion." (Document No. 12, p. 10) (citing Tr. 22-27, 31, 1187, 2222).

In reply, Plaintiff again asserts that there is a "need" for a function-by-function assessment under Mascio, which states that remand "may be appropriate" if "the ALJ fails to assess the claimant's capacity to perform a relevant function, despite contradictory evidence in the record or where other inadequacies in the ALJ's analysis frustrate meaningful review." (Document No. 13, p. 3) (citing Mascio, 780 F.3d at 636) (internal quotation marks omitted). Plaintiff reiterates her argument that the ALJ cherry-picked evidence and failed to adequately explain her RFC conclusions. Id. at 5.

In this case, the undersigned finds that the ALJ's explanation is sufficiently supported by substantial evidence. While the RFC determination by the ALJ does not articulate each individual function, the ALJ is not required to do so in her determination that Plaintiff retains the RFC to perform medium work. See Dowling v. Comm'r of Soc. Sec. Admin, 986 F.3d 377, 388 (4th Cir.

10

2021) (noting that the Fourth Circuit declined to adopt a *per se* rule requiring remand when the ALJ does not perform an explicit function-by-function analysis); see also Woodard v. Comm'r of Soc. Sec. Admin., No. 5:23-CV-053-KDB, 2024 WL 50423 (W.D.N.C. Jan. 4, 2024) ("the *Dowling* court acknowledged there is no *per se* rule requiring remand any time the function-by-function analysis is deficient or even absent altogether."). While Plaintiff correctly notes that SSR 96-8p directs each function must be considered separately, it does not require each function to be articulated separately. See Jenkins v. Kijakazi, No. 1:20-CV-221-KDB, 2021 WL 3745030 (W.D.N.C. Aug. 24, 2021) (affirming the Commissioner's decision, despite the lack of function-by-function articulation in the RFC).

Regarding Plaintiff's argument that the ALJ failed to properly evaluate Plaintiff's capacity for sustained work activity and ability to regularly attend work, the undersigned observes the Fourth Circuit's determination that "in light of SSR 96-8p, [an RFC conclusion] implicitly contain[s] a finding that [the claimant] is able to work an eight-hour day." Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). Further, the undersigned finds that the ALJ adequately considered Plaintiff's subjective complaints of headaches and fatigue, including how medication would affect Plaintiff's ability to regularly attend work, as well as objective findings in the clinical record. (Tr. 24-30). The ALJ acknowledged Plaintiff's testimony, noting that

> [t]he claimant reported constant neck pain, as well as discomfort in her shoulders, back, midback, hip and between her shoulder blades . . . Shoulder pain was at a 10 with no range of motion. The claimant also stated that she has constant headaches . . . The claimant also takes a medication prescribed by her ENT specialist when her headaches are in the 10/10 range. The drug helps her pain but knocks her out at the same time . . . She has issues while driving and experiences constant pain in her arms and shoulders . . . The claimant asserted that she could not do prep work now because standing and looking down hurts her neck, and because the job requires constant use of her right arm . . . She endorsed 2 quick onset

11

> fatigue flares in the month of March . . . She stated that she cannot
> reach out or behind with her right upper extremity.

(Tr. 22-23).

The ALJ then concluded that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [her] decision." (Tr. 23). The ALJ additionally referenced "improve[ments]" in Plaintiff's "right shoulder pain," "neck, thoracic spine and low back pain," and "fatigue." (Tr. 31, 27, 26).

Additionally, the ALJ went on to evaluate the results of Plaintiff's consultive examination, finding "[h]er reported pain on February 14, 2022, was mild at 3/10," "the claimant's extremity strength was 5/5 throughout," "upper extremity sensation was intact," "[h]er gait was steady and stable, and the claimant could tandem walk." (Tr. 33) (citing Tr. 2220, 2222-23). The ALJ further noted from these findings that while "a right shoulder impingement test on March 4, 2022, was positive . . . the claimant's muscle strength otherwise was 5/5." (Tr. 33) (citing Tr. 2365). The ALJ additionally considered potential defects in the State agency medical consultant's findings, noting that he "did not examine the claimant, he did not adequately consider symptoms of asthma, allergies and cervical spondylosis, and he did not adequately consider the claimant's subjective complaints of pain." (Tr. 33) (citing Tr. 101-110). Because of these potential defects, the ALJ found that "**a more restrictive residual functional capacity is warranted**" than the one found by the State agency medical consultant. (Tr. 33).

Overall, the undersigned finds that the ALJ did not "cherry-pick" evidence, but rather provided a detailed analysis of the record, including Plaintiff's subjective testimony regarding her residual capacity to perform relevant functions. (Tr. 22-33). Ultimately, considering the ALJ's extensive analysis of the record, Plaintiff's argument that the ALJ should have provided greater

12

explanation for its RFC determinations asks the reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner. This the Court cannot do.

### B. Explanation of the Evidence and Conclusions

Next, Plaintiff argues that the ALJ failed to "demonstrate an accurate and logical bridge" from the evidence to her conclusions." (Document No. 10, p. 20) (citing Arakas v. Comm'r, Soc. Sec. Admin., 983 F.3d 83, 95 (4th Cir. 2020)). Plaintiff specifically points to the ALJ's failure to address why Plaintiff would seek "self-financed treatment at such frequency" if there were not underlying chronic conditions that Plaintiff hoped to address. Id. at 21. Plaintiff reiterates this point in her reply. (Document No. 13, p. 6). Further, Plaintiff argues that the ALJ "cherry-pick[ed] selective facts that support non-disability, while ignoring evidence pointing to disability." Id. at 20 (internal quotation marks omitted).

Additionally, Plaintiff contends that the ALJ "mischaracteriz[ed]" Plaintiff's December 28, 2021, cervical MRI "by stating that it showed only 'mild to moderate abnormalities,' TR 19, and 'moderate abnormalities,' TR 31." (Document No. 10, p. 21). Plaintiff asserts that the ALJ erroneously failed to mention "many more findings . . . including . . . at C4-5 . . . severe bilateral neural foraminal encroachment and at C5-6 . . . severe left and mild right neural foraminal encroachment." Id. at 22.

Plaintiff also contends that the ALJ erroneously referred to Plaintiff's "Epstein-Barr virus infection" as "only a 'history,'" while the record "actually states" Plaintiff's Epstein-Barr chronic fatigue "in the present tense." (Document No. 10, pp. 22-23) (citing Tr. 2162). Plaintiff contends that this asserted error caused the ALJ to insufficiently evaluate Plaintiff's "pervasive complaint" of fatigue. Id. at 23.

13

Finally, Plaintiff argues that the ALJ failed to construct an accurate and logical bridge between the evidence and her conclusion that Plaintiff "could do all activities of daily living." Id. at 24. Plaintiff specifically contends that the ALJ overly relied upon "the consulting psychologist's report" in the ALJ's determination that Plaintiff "could do all activities of daily living." Id. at 24-25 (internal quotation marks omitted).

In response, Defendant contends that the ALJ sufficiently explained the evidence and ultimate conclusions to facilitate meaningful judicial review. (Document No. 12, p. 11). Defendant asserts that Plaintiff's argument that the ALJ "cherry-picked" evidence asks "the ALJ to cite every piece of evidence about his impairments and draw the same conclusion." Id. at 11 (citing Custudio v. Kijakazi, No. 3:20-CV-576-DCK, 2022 WL 2239965, at *10 (W.D.N.C. June 2022)).

Regarding Plaintiff's assertion that the ALJ failed to address why a person might seek extensive self-financed acupuncture treatment if that person did not have underlying chronic conditions, Defendant notes that the ALJ "acknowledge[ed] . . . treatment with acupuncture . . . but found that the unremarkable examination findings and good response to treatment do not support Plaintiff's complaints of disabling pain." (Document No. 12, p. 11) (citing Tr. 32).

As to Plaintiff's contention that the ALJ "mischaracterized" Plaintiff's cervical MRI findings, Defendant responds that the ALJ's description of the MRI as showing "moderate abnormalities" is "consistent with how the neurosurgeon[3] described the MRI findings." (Document No. 12, p. 12). To Plaintiff's contention that the ALJ insufficiently considered Plaintiff's Epstein-Barr viral infection and associated fatigue, Defendant responds that "the ALJ found [Plaintiff's Epstein-Barr viral infection] to be a nonsevere impairment due to lack of

---

[3] Plaintiff correctly points out in her Reply Brief (Document No. 13, p. 7) that this description of the MRI findings was made by a physician's assistant, not a neurosurgeon. (Tr. 2219).

evidence of significant limitations or treatment." Id. Thus, Defendant argues, "Plaintiff did not meet her burden of proof at step two of the sequential evaluation." Id. (citing Monroe v. Colvin, 826 F.3d 176, 179 (4th Cir. 2016)).

Finally, regarding Plaintiff's assertion that the ALJ's determination that Plaintiff "could do all activities of daily living" was erroneous, Defendant responds that "Plaintiff testified she drives, cooks for herself, takes her dog for walks, dusts her floors, mops, and does laundry" and further notes that "[t]his [testimony] is also consistent with Plaintiff's reported activities in her function report." (Document No. 12, p. 13) (citing Tr. 49, 66, 317-19). Additionally, Defendant highlights the ALJ's "express acknowledgement" of Plaintiff's qualification that she is able to "perform some of these activities on 'better days.'" Id. (citing Tr. 23).

Overall, the undersigned finds that the ALJ sufficiently explained her conclusions in her determination of Plaintiff's RFC. Regarding the ALJ's characterization of Plaintiff's MRI, the undersigned finds that the ALJ adequately weighed that objective evidence and adequately connected that evidence to her conclusions by explaining that "a broad medium residual functional capacity is warranted because contemporaneous notes show good function despite cervical degenerative disc disease." (Tr. 31).

Regarding Plaintiff's contention that the ALJ's characterization of Plaintiff's Epstein-Barr infection as a "'history' reveals [the ALJ's] disdain for the claim" (Document No. 10, p. 22) (citing Tr. 18), the undersigned notes that the record which Plaintiff cites for this contention lists Epstein-Barr under "HPI," an abbreviation for "history of present illnesses," (Tr. 2162), and thus it was likely that the ALJ simply used the "history" language found in the record which Plaintiff herself cited. As noted above regarding function-by-function analysis, the undersigned finds that the ALJ

adequately considered Plaintiff's symptoms of fatigue, including those potentially attributable to Epstein-Barr, and that her explanations did not frustrate meaningful review.

Finally, regarding the ALJ's assessment of Plaintiff's ability to perform daily activities, the undersigned finds that the ALJ adequately balanced record evidence of Plaintiff's abilities with Plaintiff's subjective qualifications that her abilities are greater on "better days." (Tr. 21, 23, 28-29). Notably, the ALJ observed that "claimant testified that she does handyman services, small title jobs, and she power washes and stains decks. Her medical records also note using a hammer on cabinets . . . although this job is not full time, the work activity would be considered medium to heavy." (Tr. 32). Overall, the undersigned finds that the ALJ's decision is sufficiently explained and is supported by substantial evidence as required by law.

## CONCLUSION

The undersigned finds that there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence supports the Commissioner's decision. Richardson v. Perales, 402 U.S. 389, 401 (1971); Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005). As such, the undersigned will recommend that the Commissioner's decision be affirmed.

## RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that the Commissioner's determination be **AFFIRMED**.

## TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within **fourteen (14) days**

of service of same.  Responses to objections may be filed within fourteen (14) days after service of the objections.  Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  <u>Diamond v. Colonial Life</u>, 416 F.3d 310, 315-16 (4th Cir. 2005); <u>United States v. Benton</u>, 523 F.3d 424, 428 (4th Cir. 208).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  <u>Id.</u>  "In order 'to preserve for appeal an issue in a magistrate judge's report, a party must object to the finding or recommendation on that issue with sufficient specificity so as reasonably to alert the district court of the true ground for the objection.'"  <u>Martin v. Duffy</u>, 858 F.3d 239, 245 (4th Cir. 2017) (quoting <u>United States v. Midgette</u>, 478 F.3d 616, 622 (4th Cir. 2007)).

**IT IS SO RECOMMENDED**.

Signed:  June 5, 2024

David C. Keesler
United States Magistrate Judge